IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
             Plaintiff,             )     Case No. 2:04CV750
                                    )
         v.                         )
                                    )
ONE PARCEL OF PROPERTY              )     MEMORANDUM OPINION
LOCATED AT 892 COUNTY ROAD          )
505, VERBENA, CHILTON COUNTY,       )
APPURTENANCES AND IMPROVEMENTS      )
THEREON,                            )
                                    )
             Defendant.             )
_____)

          This is a civil *in rem* forfeiture action brought by the

plaintiff, United States of America, seeking forfeiture of the

defendant Property, pursuant to 21 U.S.C. § 881(a)(7).  Claimant,

Billy Wayne Simmons, the owner of the defendant Property,

contests forfeiture, claiming that the defendant Property is not

substantially connected to drug trafficking and that forfeiture

would violate the Eighth Amendment's excessive fines clause.[1]

Based on the evidence presented during a non-jury trial held on

_____

[1] First Family Financial Services, which holds a secured interest in the
defendant Property, also filed a Verified Claim/Statement of Interest to the
Property.  First Family's interest in the defendant Property, however, was not
presented as an issue at trial because First Family has ensured, via a
Stipulation for Compromise Settlement entered into between it and the United
States and the loan and security agreement entered into between it and the
claimant, that its interest would be recognized and paid, regardless of the
outcome at trial.  Accordingly, First Family's rights to the defendant
Property will not be addressed in this opinion.

March 17, 2006, the Court makes the following findings of fact and conclusions of law, pursuant to Fed. R. Civ. P. 52.

## I.   FINDINGS OF FACT

Billy Wayne Simmons ("Simmons") is the owner of the defendant Property, subject only to the secured interest of First Family Financial Services ("First Family").[2]

The assessed tax value of the defendant Property is approximately $131,000.

As of March 20, 2006, First Family had a mortgage lien on the defendant Property in the amount of $29,122.

Simmons has approximately $102,000 of equity in the defendant Property.

On or about September 20, 2001, agents of the Central Alabama Drug Task Force ("CADTF") arranged a controlled buy between a Confidential Informant ("CI") and Simmons.  The CI, under the supervision of CADTF agent, Jeff Moore ("Agent Moore"), and other agents contacted Simmons to arrange for the purchase of marijuana at the defendant Property.  Prior to the buy, CADTF agents searched the CI's person and vehicle to ensure that he had no drugs or money in his possession.  The agents then wired the CI and gave him $375.00 in cash to purchase marijuana from Simmons.  The agents then followed the CI to the defendant

---

[2] The defendant Property consists of a two-acre parcel of land with a single-family residence.

-2-

Property, set up surveillance, and observed the CI walk toward
the residence on the property.  The agents were able to hear the
conversation between Simmons and the CI, via the CI's wire, but
were unable to record it, due to difficulties with the recording
equipment.

After the CI made the marijuana purchase, he returned
to his vehicle, made a statement that he had just purchased a
quarter pound of marijuana from Simmons, and told CADTF agents
that he was returning to the predetermined meeting location.  The
CADTF agents followed the CI back to the meeting location and the
CI turned over approximately a quarter pound of marijuana to
CADTF agents.

The marijuana the CI purchased from Simmons was taken
to the laboratory at the Alabama Department of Forensic Sciences.
Laboratory analysis confirmed that the material purchased by the
CI consisted of 109.94 grams of marijuana.

Approximately two weeks after the first controlled buy,
CADTF agents, in cooperation with the same CI, arranged for
another controlled buy between the CI and Simmons.  The second
controlled buy was set up in the same manner and was to be for
the same amount of marijuana as in the first controlled buy.
However, according to Agent Moore, who was listening to the
conversation between the CI and Simmons via the CI's wire, when

-3-

the CI entered Simmons' residence, Simmons drew a gun, pointed it at the CI, told the CI that he had heard the CI had been seen meeting with police, and demanded the CI lift up his shirt so he could see if he was wearing a wire.  The CI negotiated himself out of the situation and met back up with CADTF agents at the predetermined meeting location.  No buy occurred between the CI and Simmons on that occasion.

Approximately two-and-a-half years later, on or about March 10, 2004, CADTF agents, including Agent Moore, executed a search warrant on the defendant Property.  During the search of Simmons' residence, Simmons asked to speak with Agent Moore. Agent Moore approached Simmons and asked him what he needed. Agent Moore testified that Simmons asked him who he had sold dope to that was working for the police.

As a result of the search, several drug-related items were seized including several Ziploc baggies and other containers containing marijuana seeds, approximately 113 partially smoked marijuana cigarettes, rolling papers, one set of hand scales, $900.00, a non-operational phototron, which is a light that is commonly used to grow plants and marijuana, and several guns. These items were inventoried by Shane Mayfield, Chief Deputy for the Chilton County Sheriff's Office.

-4-

The loose-plant material and partially smoked marijuana cigarettes seized during the search of the defendant Property were taken to the laboratory at the Alabama Department of Forensic Sciences.  Laboratory analysis confirmed that the loose plant consisted of 1.34 grams of marijuana.  No analyses were performed on the cigarettes.

On August 17, 2004, Simmons was indicted in this district in a six-count superseding indictment.  Count Two charged Simmons with using and carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Count Four charged Simmons with possessing firearms while being an unlawful user of and addicted to a controlled substance, in violation of 18 U.S.C. § 922(g)(3).  Both counts were alleged to have occurred on March 10, 2004, the date the search warranted was executed.

On September 9, 2004, Simmons plead guilty to Counts Two and Four of the superseding indictment and the remaining counts were dismissed.[3]  During the change of plea hearing,

_____

[3] The remaining counts consisted of the following:  Count One charged that from an unknown date until March 10, 2004, Simmons had possessed marijuana with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1); Count Three charged that on or about March 10, 2004, Simmons, having a prior felony conviction for selling marijuana, knowingly possessed firearms, in violation of 18 U.S.C. § 922(g)(1); Count Five charged that on or about September 20, 2001, Simmons knowingly and intentionally distributed marijuana, in violation of 21 U.S.C. § 841(a)(1); Count Six charged that on or about October 10, 2001, Simmons knowingly possessed and brandished a firearm in furtherance of a

-5-

Simmons admitted under oath that on March 10, 2004, he possessed firearms inside his house on the defendant Property; that officers found marijuana and marijuana seeds in his house; that there was money in a safe inside the house on that date, that there was a set of scales inside the house on that date; and that he was addicted to and used marijuana.

At the sentencing hearing held on January 4, 2005, the Court found that Simmons had a criminal history category of I and an offense level of 15, which resulted in a guideline range of 18 to 24 months and a fine ranging from $4,000 to $40,000 dollars. The Court sentenced Mr. Simmons to 78 months imprisonment, consisting of 18 months of imprisonment on Count Four and 60 months of imprisonment on Count 2, to be served consecutively, and five years of supervised release.  The Court did not impose a fine.

Simmons has two prior state felony convictions for selling marijuana, both of which date back to July of 1982.

On August 6, 2004, the government commenced this *in rem* civil forfeiture action against the defendant Property.  The government claims that the defendant Property was used or intended to be used to commit or facilitate the commission of a

drug trafficking crime, in violation of 21 U.S.C. § 924(c).  The superseding indictment also contained a forfeiture allegation.

-6-

violation of 21 U.S.C. § 841 and is thus subject to forfeiture under 21 U.S.C. § 881(a)(7).

## II.   CONCLUSIONS OF LAW

### A.   Forfeiture

The United States seeks forfeiture of the defendant Property under 21 U.S.C. § 881(a)(7).  Section 881(a)(7) of the Controlled Substances Act authorizes the United States to forfeit

> [a]ll real property, including any
> right, title, and interest
> (including any leasehold interest)
> in the whole of any lot or tract of
> land and any appurtenances or
> improvements, which is used, or
> intended to be used, in any manner
> or part, to commit, or to
> facilitate the commission of, a
> violation of this subchapter
> punishable by more than one year's
> imprisonment.

21 U.S.C. § 881(a)(7).  This forfeiture provision is subject to the standards set forth in the Civil Asset Forfeiture Reform Act of 2000 ("the CAFRA" or "the Act"), 18 U.S.C. § 981, *et seq.*  The Act places the burden of proof on the government to establish, by a preponderance of the evidence, that the defendant Property is subject to forfeiture.  Here, the government contends that the defendant Property is subject to forfeiture because Simmons used the defendant Property to knowingly or intentionally distribute, dispense, or possess with intent to distribute, or dispense, a

-7-

controlled substance, in violation of 21 U.S.C. §841.[4]
Accordingly, the CAFRA requires the government to prove, by a
preponderance of the evidence, (1) that there is a substantial
connection between the defendant Property and the commission or
facilitation of a violation of § 841 (2) that is punishable by
more than one year in jail.  *See* 18 U.S.C. § 983(c)(3); *United
States v. $22,991.00 More or Less, In United States Currency,* 227
F. Supp.2d 1220, 1231 (S.D. Ala. 2005).  To satisfy this burden,
the government may rely on both direct and circumstantial non-
hearsay evidence, *see id.* and *id*. at n. 3, including evidence
that was "gathered after the filing of a complaint for
forfeiture."  18 U.S.C. § 983(c)(2).

    1.    **Substantial Connection**

        After reviewing the evidence and the applicable law,
the Court finds that the government has proven, by a
preponderance of the evidence, that the defendant Property is
substantially connected to a drug trafficking offense under
§ 841.  The Court relies on several factors, in their aggregate,
to support this conclusion.  First, the Court relies on the
testimony of Agent Moore, who facilitated the controlled buy and
the attempted controlled buy between Simmons and the CI and who

---

[4] The government also contends that Simmons is collaterally estopped from
contesting forfeiture because Simmons, by pleading to Count Two of the
superseding indictment, admitted that he engaged in drug trafficking on the
defendant Property.  This issue was resolved in the Court's order denying the
government's motion for summary judgment and will not be reconsidered here.

-8-

also participated in the search of Simmons' residence.  Agent
Moore's credible testimony establishes, by a preponderance of the
evidence, that a controlled buy involving 109.94 grams of
marijuana occurred on the defendant Property on September 10,
2001, between Simmons and the CI.[5]

Second, the Court relies on the testimony of Shane
Mayfield, Chief Deputy for the Chilton County Sheriff's Office,
who inventoried those items seized during the search of the
defendant Property.  The items seized during the search of the
defendant Property included several Ziploc baggies and other
containers containing marijuana seeds, approximately 113
partially smoked marijuana cigarettes, rolling papers, one set of

---

[5]  Under pre-CAFRA case law, this evidence alone would have been sufficient to
establish the government's then-probable cause burden of proving that the
defendant Property was used to facilitate illegal narcotics transactions.  *See
United States v. Cleckler*, 270 F.3d 1331 (11th Cir. 2001) (holding that
negotiation of one drug sale on defendant property and negotiation and
completion of second drug sale on the defendant property was sufficient to
establish a substantial connection); *see also United States v. Premises Known
as 3639-2nd St., N.E., Minneapolis, Minnesota*, 869 F.2d 1093 (8th Cir. 1989)
(concluding that single controlled buy on defendant property involving two
ounces of cocaine was sufficient to establish substantial connection because
if real property is made available as the situs for an illegal drug
transaction, it is forfeitable as § 881(a)(7) only requires a single
violation); *see also United States v. Land, Located at 1205 Beron Drive,
Metairie, Louisiana*, 1990 WL 163597 at *3 (E.D. La. 1990) ("A single drug
transaction occurring on the real property is sufficient to violate 21 U.S.C.
§ 881(a)(7) . . . even is [sic] only a small amount of drugs [were]
involved.") (internal citations omitted).  It is unclear, however, under post-
CAFRA case law whether the controlled buy that occurred in this case, without
additional evidence, would be sufficient to satisfy the post-CAFRA
preponderance of the evidence standard.  Nonetheless, the Court need not
decide that issue here because other evidence introduced at trial, in
conjunction with the controlled buy, supports the conclusion that a
substantial connection exists between the defendant Property and drug
trafficking.

hand scales, $900.00, and a phototron, which was inoperative but is generally used for growing marijuana, and several guns.  The presence of these items in the home, in consideration with other evidence discussed herein, support a conclusion that Simmons used these items to distribute drugs.

        Third, the Court relies on Agent Moore's testimony regarding the attempted controlled marijuana buy between Simmons and the CI on the defendant Property.  Officer Moore, who was listening to the conversation between the CI and Simmons via the CI's wire during the buy, testified that Simmons drew a gun, pointed it at the CI, told the CI he had heard the CI had been meeting with the police, and demanded the CI lift up his shirt so he could see if he was wearing a wire.  These statements and actions, made during the course of an attempted buy, create a reasonable inference that Simmons was selling drugs on the defendant Property.

        Fourth, the Court relies on those admissions made by Simmons during his conversation with Agent Moore during execution of the search warrant on the defendant Property.  According to Agent Moore's testimony, Simmons asked Moore who he had sold dope to that was working for the police.  Thus, according to Agent Moore's testimony, which this Court has no reason to disbelieve, Simmons admitted to selling drugs.

In combination, these four factors, namely, the controlled buy, the drug-related items seized during the search of the defendant Property, the statements made by Simmons during the attempted controlled buy, and Simmons' admission during the execution of the search warrant that he had sold dope are sufficient to establish, by a preponderance of the evidence, that the defendant Property is substantially connected to the distribution of a controlled substance under § 841.

### 2.   Punishable By More Than One Year Imprisonment

Having concluded that the defendant Property was substantially connected to a drug trafficking offense under § 841, the next issue that must be resolved is whether that offense  would be punishable by more than one year imprisonment. Section 841 offenses involving less than 50 kilograms of marijuana are punished under 21 U.S.C. § 841(b)(1)(D).  Section 841(b)(1)(D) provides, in relevant part:

> In the case of less than 50 kilograms of marihuana . . . such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, [and] a fine not to exceed . . . $250,000 if the defendant is an individual . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10

-11-

> years . . . [and] a fine not to
> exceed $500,000 if the defendant is
> an individual . . . .

21 U.S.C. § 841(b)(1)(D).

In this case, Simmons, who has two prior state felony convictions for selling marijuana, would be subject to up to ten years imprisonment under § 841(b)(1)(D).[6] Accordingly, the Court finds that the defendant Property is substantially connected to a drug trafficking offense that is punishable by more than one year imprisonment and is thus forfeitable under 21 § 881(a)(7).

**B.    Excessiveness under the Eighth Amendment**

Simmons contends that the forfeiture of the defendant Property constitutes an "excessive fine" in violation of the Eighth Amendment.  Simmons asserts that forfeiture of the defendant Property is unconstitutional because the $102,000 of equity subject to forfeiture is grossly disproportionate to the value of his offense.

Forfeitures under 18 U.S.C. § 881(a)(7) are limited by the Eighth Amendment's excessive fines clause.  *See Austin v. United States*, 509 U.S. 602, 622 (1993).  The excessive-fines clause "requires a review of the proportionality of the fine imposed, that is, a review of whether the fine imposed by civil

_____

[6] Although Simmons' prior state felony convictions date back to July of 1982, they still constitute a "felony drug offense" under 21 U.S.C. § 841(b)(1)(D). *See United States v. Curry*, 404 F.3d 316 (5th Cir. 2005) (holding that a 1982 state felony conviction qualifies as a "felony drug offense" under 21 U.S.C. § 841(b)(1)(A)).

forfeiture is excessive given the criminal offense underlying the action." *United States v. Two Parcels of Real Property Located at 101 North Liberty Street and 105 Liberty Street in Clanton, Chilton County, Alabama*, 80 F. Supp.2d 1298, 1301 (M.D. Ala. 2000) (internal quotations omitted); *United States v. One Parcel of Property located at 427 and 429 Hall Street*, 74 F.3d 1165, 1172 (11th Cir. 1996).  A fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

There is no definitive checklist of relevant factors for the Court to consider in deciding whether a fine that results from a forfeiture is excessive.  *North Liberty Street*, 80 F. Supp.2d at 1301 (citing *Hall Street*, 74 F.3d at 1172).  However, the Eleventh Circuit in *United States v. 817 N.E. 29th Drive, Wilton Manors*, 175 F.3d 1304, 1309 (11th Cir. 1999), did outline two factors to be considered:  first, "if the value of the forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional."  And second, "if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive."  *Id*. at 1310.[7]

---

[7]  In addition, other courts have considered (1) the extent and duration of the criminal conduct; (2) the culpability of the claimant; (2) the gravity of the offense; and (3) the nature and value of the property to be forfeited.

In the present case, the defendant Property was used to facilitate the sale of 109.94 grams of marijuana.  Applying the sentencing guidelines, the 109.94 grams of marijuana involved here results in a base offense level of 6.  U.S.S.G. § 2D1.1 (2004).  The fine range under the guidelines for a level 6 offense is from $500 to $5,000.  U.S.S.G. § 5E1.2(c)(3).  The maximum statutory fine that can be imposed for an offense under 21 U.S.C. § 841 involving less than 50 kilograms of marijuana for an individual with prior felony convictions is $500,000.  *See* 21 U.S.C. § 841(b)(1)(D).[8]

While the statute allows up to a $500,000 fine to be imposed in this case,[9] the Court concludes that the guidelines fine range is the more reasonable factor to be considered in

---

*See United States v. Milbrand*, 58 F.3d 841, 847-848 (2d Cir.1995); *United States v. Certain Real Property Located at 11869 Westshore Dr.*, 70 F.3d 923, 937-30 (6th Cir. 1995);  *U.S. v. Dodge Caravan Grand SE/Sport Van, Vin #1B4GP44G2YB7884560*, 387 F.3d 758, 763 (8th Cir. 2004).

[8] 21 U.S.C. § 841(b)(1)(D) provides, in relevant part:

> In the case of less than 50 kilograms of marihuana . . . such person shall . . . be sentenced to a term of imprisonment of not more than 5 years, [and] a fine not to exceed . . . $250,000 if the defendant is an individual . . . *If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, [and] a fine not to exceed . . . $500,000 if the defendant is an individual . . .*"

21 U.S.C. § 841(b)(1)(D) (emphasis added).

[9] The Court is aware that where the maximum statutory fine exceeds $250,000 the sentencing guidelines provide that the maximum guidelines fine does not apply and "the court *may* impose a fine up to the maximum authorized by the statute."  U.S.S.G. § 5E1.2(c)(4) (emphasis added).

-14-

determining excessiveness.  Had Simmons plead guilty to distributing marijuana, the only measurable amount of marijuana attributable to him would have been 109.94 grams.  At sentencing, the fine that would have been realistically imposed for that offense, if any, would have been, at a maximum, the $5,000 fine under the guidelines.  The Court simply would not have imposed a hundred or several hundred thousand dollar fine under the statute for distributing 109.94 grams of marijuana worth approximately $375.00.  Thus, while the $102,000 of equity Simmons has in his home is within the $500,000 maximum statutory fine that could be imposed, the Court concludes that forfeiture would be grossly disproportionate to the gravity of Simmons' offense where the value of his offense was only $375 and the maximum actual fine that would have realistically been imposed under the guidelines was $5,000.  For these reasons, the Court concludes that forfeiture of the $102,000 of equity Simmons has in the defendant Property would be unconstitutionally excessive.

### III.  Conclusion

In conclusion, the Court finds that the government has proven, by a preponderance of the evidence, that the defendant Property is substantially connected to the distribution of a controlled substance under § 841 punishable by more than one year imprisonment and is thus forfeitable under § 881(a)(7).  The

-15-

Court further finds, however, that forfeiture of the $102,000 of equity Simmons has in the defendant Property would be disproportionate to the gravity of his conduct and thus unconstitutionally excessive under the Eighth Amendment.  As such, judgment is entered in favor of Simmons.  A separate order will be entered.

DATED this 3rd day of April, 2006.

BY THE COURT:

/s/ Lyle E. Strom

_____

LYLE E. STROM, Senior Judge
United States District Court